## THE FLYER.

### REDDING v. THE FLYER.

(District Court, D. Washington, N. D. June 18, 1894.)

### No. 575.

COLLISION—FOG—STEAMERS PASSING—RATE OF SPEED.

Two steamers, on regular runs in opposite directions, in a fog so dense that the exact position and course of one could not be known to the officers of the other in time to pass safely at full speed, should have passed starboard to starboard, as their courses did not cross, and the master of each knew the route and direction of the other; but the master of one, hearing the other's whistle, assumed that they were coming together on opposite courses, gave the signal to pass port to port, and set his helm hard a-port, thereby swinging his vessel across the other's bow. The other pursued her proper course, and gave the proper signals for passing, but continued her full speed of 18 to 20 miles an hour until the vessels came in sight of

each other, and, before her speed was perceptibly checked, struck the timbers supporting the stern wheel of the first vessel. *Held*, that both were in fault.

This was a libel by Thomas Redding, owner of the steamer Mary F. Perley, against the steamer Flyer, for damages caused by a collision between said vessels.

E. C. Hughes, for libelant.
L. C. Gilman, for claimant.

HANFORD, District Judge. The collision complained of in this case occurred on a foggy morning in October, 1892, about one mile and a half south of Battery Point (locally known as Alki Point). The Mary F. Perley was at the time on her regular run from Tacoma via Vashon's Island to Seattle, and should have been at the time on a direct course from Beal's Point to Battery Point. The Flyer was making her regular run from Seattle to Tacoma, and had rounded Battery Point, and taken her course from that point towards Point Pulley. On these courses the vessels should have passed each other starboard to starboard, as their tracks do not cross each other, the master of each vessel knew the route and schedule time of the other, and each should have known that in case of meeting south of Battery Point they should pass starboard to starboard. The master of the Flyer so understood and acted. But the libelant, who was in command of the Mary F. Perley, after hearing the Flyer's whistle, erroneously assumed that the vessels were coming together on opposite courses, and thereupon gave the signal to pass to port, and set his helm hard a-port, thereby swinging his vessel to a position across the bow of the Flyer. This, in my opinion, was an inexcusable mistake, and a contributing cause to the collision. The Flyer pursued her proper course, and gave the proper signals for passing, but on account of the density of the fog the exact position and course of one could not be known to the officers of the other vessel in time to pass safely, running at full speed. It was the duty of the Flyer, therefore, to proceed cautiously after hearing the whistle of the Mary F. Perley, and stop immediately after her failure to make the proper response to the Flyer's signal. The Flyer's master testified that within one minute and a half after giving his first signal her engines were stopped and reversed, and in this he is corroborated by the testimony of other officers of the Flyer; but upon a decided preponderance of the evidence I find the facts to be that from the time of leaving Seattle until the vessels came in sight of each other the Flyer was running at her full speed of 18 to 20 miles per hour. Her engine-room bell was rung to stop and reverse as quickly as it could be after the first slow bell. Passengers, who knew from the bells that something unusual was about to happen, had scarcely time to move from their seats in time to see the steamers come together. The Flyer's stem struck the timbers supporting the stern wheel of the Mary F. Perley with such great momentum as to cut away entirely the wheel and said supporting timbers, and tear out her eccentrics and one of

her pistons. At the time of striking the Flyer's speed had not been perceptibly checked. The duty of steam vessels to stop when there is known danger of colliding in a fog is imperative, and, if the rule on this subject had been observed by the master of the Flyer, this collision could have been avoided. I find, therefore, that there was fault on the part of both vessels contributing to produce the injury to the libelant's vessel.

The case will proceed in the usual way to ascertain the amount of damages, and, when ascertained, one-half the amount thereof will be decreed in favor of the libelant. The costs will be divided equally.